Good morning. Our final case for today is Charles Kevin Simpson versus the U.S. Attorney General case number 19-11156. Mr. Bellows, before we begin, I want to thank you on behalf of the court for taking this case through a court appointment on behalf of Mr. Simpson. I know that we really appreciate your service and I know Mr. Simpson does as well. Whenever you're ready, you may begin. May it please the court, Christopher Bellows on behalf of the petitioner Charles Simpson. I'm not going to address the jurisdictional argument because this court has already ruled that the defect in the notice to appear is not jurisdictional in the Perez-Sanchez case. And I also want to observe that the issue is to the defect in the notice to appear as was just argued in the Supreme Court in this Chavez versus Barr in November. And I don't know that the jurisdictional issue is going to be on the table there. But, you know, we don't know. But that case is up in the Supreme Court and they will be addressing the effect of a defect in the notice to appear. So I'm not going to address that because this court has already ruled that the defect is not jurisdictional. I want to go straight to the indivisibility of this particular statute that Mr. Simpson pleaded no contest to, Florida Statute 790.231. And I wanted to start off with a hypothetical, if the court would indulge me, because I think at least it's helpful to me. It might not be helpful to the court, but I think it's helpful to me in explaining why this statute is clearly indivisible. And of course, the indivisibility of the statute takes us to the categorical approach. And when you match the Florida statute versus its federal counterpart, this is not a deportable offense. So my hypothetical is this, the police walk into a situation, they see a bunch of bags, they're full of weapons, all different kinds of weapons. You've got firearms, you've got ammunition devices, you've got electric weapons of all different shapes and sizes. And there's an issue as to whether the person that's about to be arrested, they're arrested, there's going to be an trial as to possession, because the weapons were in different places in different bags. And so possession is going to be an issue, but you've got all different kinds of weapons. Now under this statute, the prosecutor does not have to pick a particular type of device. The prosecutor does not have to pick firearm, they're not stuck with that. They don't have to pick ammunition. They can put in the entire kitchen sink. And putting in the entire kitchen sink, let's assume it goes to a jury. This case did not go to a jury, it was just a plea of no contest. Let's assume it goes to a jury. The jury does not have to agree on what device was in the possession of this convicted felon. The two elements are, is the person a convicted felon? The second element is, were they in possession of an unlawful device? And then instructed as to the various devices that there are. These devices are alternative means of committing this offense, which is essentially a felon in possession of an unlawful device. But the jury doesn't have to agree. You can have two jurors that decide it's a firearm, two jurors that decide that he was in possession of an electric weapon, and two jurors might decide that he was only in possession of ammunition. They don't have agree as to the specific device. But if the jurors agree that he was in possession of one of these, then he's committed the offense. So that hypothetical, and under the standard jury instruction, and we're allowed to look at that to at least determine whether it's indivisible. Under the standard jury instruction, the prosecutor does not have to identify whether it's going to be a firearm, an ammunition, or an electric weapon that's being presented to the jury. Now, I'm not a weapons person, but I can tell you, I know that when we get in, they're going to make a divisibility argument. They're going to say, we can look at the facts. And in the facts, the indictment and the other papers show that there was a shotgun. Well, I can tell you, again, I'm not a weapons guy, but there are electric shotguns. So the fact that there's shotgun doesn't really mean anything, because you can have electric shotguns. You can have all kinds of electric weapons. So if you look at this hypothetical, and you agree with me that the prosecutor doesn't have to identify a specific weapon, and that a jury doesn't have to agree on whether it's a firearm. What are we to make of the Florida standard jury instructions for the offense 790.23, which says, after conviction, the defendant knowingly owned or had in his or her care, custody, possession, or control. And then there are three brackets for three distinct items, a firearm, an electric weapon, or a device, the prosecutor has to choose one of the bracketed items. And in fact, in this case, the information charging Simpson provided, specifically, the answer to that question, care, custody, possession or control of a firearm. Here it shows, and the instructions, at least, put it in the disjunctive, and bracket three separate devices, whether we call them elements or means, of course, is the is the issue. But the government thought it was obliged to lay out that it was a firearm, that it was a shotgun, in particular, and instructions themselves required choosing from the list of three possibilities. Does that shed any light on whether it's divisible or indivisible? Well, let's go back to the instructions, because the instructions do not say that you have to pick one or the other. If you go down later in the instructions, when you do have to pick, it says give only if the defendant is charged with this. But when you go through the devices, it doesn't say give only, it just says give as appropriate, which to me, means that you can give all three of them. As you get down later in the instructions, it tells you, it restricts you in giving a certain instruction, only if that is what's being charged. So up earlier in the instruction, it gives the prosecutor the discretion to throw in the kitchen sink. Well, he could hardly charge the unlawful possession of an electric weapon, if what the guy possessed was a Glock 9 millimeter pistol. Again, you might have a hypothetical where they're just there's different weapons. Suppose the prosecutor had said, please, if the prosecutor had said it was an electric weapon, and in fact, it was a Glock 9 millimeter, what would have happened? They're not going to present what you have made to the state trial court at that point. At some point, you would have moved for a verdict, wouldn't you? It would never get to a jury. You would have said this is an element they have to prove, as opposed to in a federal case arising under, say, the controlled substances law, if they just described it as a controlled substance, and they didn't tell you whether it was cocaine or heroin, let's say. But if the prosecutor had said it was an electric weapon, and in fact, it was a Glock 9 millimeter, you would have said they haven't met the element and the charge. The charge required them to prove an electric weapon. They proved a Glock 9 millimeter. You're absolutely right. And what we're doing here in this discussion is we're getting into the facts of the case, which is just, I mean, that's just natural. The facts, all I looked at was the indictment itself with the charging instrument. I didn't go behind the charging instrument and look at the record, although maybe I could even do that if it's unclear, and I needed more clarification, whether it was categorical or modified categorical. But I'm just saying, if indeed he had charged the wrong weapon, you would be arguing that they couldn't, he wasn't guilty of the crime charge. It doesn't matter that he had a shotgun or 10 shotguns. He was charged with an electric weapon, and you would have said that was an element. Well, he's charged with violating the statute, and the statute includes a number of different weapons, including firearms, including electric weapons. He doesn't admit to any of this. I mean, there's never been a jury that found that he was in possession of anything. He pleads no contest. And the problem here is the government has the burden of proof, and nothing's ever been proved. And the concern that I have here is that when you plead no contest, you're pleading no contest to a statute. The statute is broader than the you know, I don't know if he relied on an attorney to tell him, look, you're safe here because this statute has things in there that do not subject you to deportation, and you plead no contest. You have the right to rely on Mathis, which says, look, if these statutes don't match up, you cannot be deported, and these statutes do not match up. And the fact that they put in firearm, that's still a means. It's not an element of the crime. Mr. Fellowes, before you finish up, let me ask you a question. I'm sympathetic to your position and Mr. Simpson's argument, but there are two of our cases, which were decided relatively recently in 17 and 18, which hold that under a burglary statute, the location of the burglary or the it makes the statute divisible. And then we have Gundy. One of them is called Gillen. The other one is called Gundy. One involves that burglary statute, and the other one involves the Florida narcotics statute, which deals with different types of narcotics, possessed, sold, distributed, et cetera. And in that one, we also hold that the statute is divisible because the type of cases play into your situation. I know Gundy because that was one I focused on, and all the divisible statutes, including Gundy, all talk about the fact that the different, let's say, elements create separate crimes. And I know in Gundy, they talk about that. The different elements, the different locational elements created separate crimes. Here, you don't have separate crimes. We cited Bell v. State yesterday. This is one unit of prosecution. The different devices do not create separate crimes. In Gundy, the court pointed out that all these different things create separate elements and separate crimes. It's therefore divisible. We cited the theft statute. The theft statute has A and B. A creates one crime. B creates both crimes. Here, this is one unit of prosecution, one crime with various means of being a felon in possession of an unlawful device. I don't know if that answers your question, but you look at your prior cases, and when you find that it's divisible, you find that these elements create separate crimes. And we know in this statute, the different devices do not give rise to separate crimes. All right, that's the answer. Thank you very much, Mr. Bell. We appreciate it. You've saved your time for rebuttal. Thank you. Okay, Mr. Leo, whenever you're, is it Leo or Leo? I think you're on mute. It is Leo, Your Honor. Sorry about that. All this high, fancy technology at DOJ, we continue to improve. I apologize for that. Good morning, whenever you're ready. Good morning, Your Honors, and may it please the court. Attorney Sabatino F. Leo, on behalf of the United States Attorney General. Your Honors, respectfully, this case is not about  raising factual situations in our mind that we can speculate on. We have a clearly defined roadmap that was set forth in the Supreme Court decision of Mathis, and as extrapolated in this court's decisions in United States v. Davis, United States v. Gundy, Sintrone v. the Attorney General, and we must in turn follow that roadmap. And when you follow that roadmap, there is really only one unequivocal decision that this court can make, is that petitioner's conviction for felon in possession of a firearm under Florida Statute 790.23 is a firearms conviction for purposes of removability under the Immigration and Nationality Act. And really, so let's jump beyond that. I think we can all agree that there is that facial over-breath component here with regard to the application of the categorical approach, i.e. when I say facial over-breath, that there are items in this particular statute of conviction that are sweet more broadly than the underlying federal firearm conviction here. And what we have here really is a divisibility test. And what Mathis and Davis and Gundy tell us is that we have to follow the roadmap again with regard to a discussion of divisibility, whether or not this particular statute is divisible. And I think Your Honor, Judge Marcus hit the nail squarely on the proverbial head here that said, this is a divisible statute in that it lays out separate elements for purposes of being convicted of this particular crime. And now a petitioner's counsel goes on and on about separate crimes and it's setting forth separate crimes. But I think his analysis is misplaced for the simple fact that even in Gundy, in the Georgia burglary statute, this court did not come in and say, well, a conviction under a burglary for breaking and entering a dwelling house is a separate crime under a separate statute when compared to breaking and entering a railroad car or a vehicle. No, it just simply said that there are separate and distinct locational elements for purposes of a conviction under the Georgia burglary statute in Gundy. And really, when you look at the particular statute here, and when you go through really the analysis that is commanded by this, by the Supreme Court in Mathis and this court's decisions, is we really have to take a look at what are statutory oritative sources of state law when it comes to, with regard to this versus elements inquiry for purposes of 790.23. Well, here, the only thing you have are the jury, and that might be enough, but here all you have are the standard jury instructions, right? You've got no Florida case law helping us on whether or not these different items are elements or means of committing the same offense, right? That is correct, Your Honor. And countless research has indicated that really nothing squares it away. And I know Petitioner's Counsel has set forth a couple of 20HA letters yesterday, which I responded to, citing to the Bell case and citing to Jones, which in turn cites a Hines state law case. And as I mentioned in my 20HA letters, those cases are clearly distinguishable. One is really a double jeopardy challenge with regarding the simultaneous possession of not only a revolver, but a speed loader, if you know what a speed loader for he could be convicted twice for possession of the firearm and the ammunition. And in the other case, with regard to this court's decision in Jones interpreting Florida state law, it discusses two elements. And in that case, and Petitioner's Counsel highlights, well, it says only, it says gun. I would implore upon this court that nowhere in the statutory definition is there a term, quote unquote, gun. There is firearm, electric weapon, or device, ammunition and the like, but nothing of gun. So even that interpretation, and that's a habeas case, which is a very limited analysis and really distinguishable from the present case. So to answer your question is what we do have here, and I think quite clearly is the jury instructions. But I think what really is our honest approach here and what Mathis and Davis and Gundy really instruct this court to do is we don't just stop at the jury instructions, but I think the jury instructions provide a pretty clear answer. And I think his honor indicated such in his questioning on Petitioner. It sets forth brackets around the terms firearm, ammunition, electric weapon, or device, clearly delineating what has to be proven beyond the reasonable doubt to a jury. And again, I respectfully disagree with opposing counts or his position as well. You can simply charge possession of firearm, ammunition, electric weapon, or device, and then have added jury. It's up to you. You can agree or disagree on anything, even though the statute in and of itself has clearly defined definitions for electric weapon or device, for firearm, for ammunition. That in and of itself, I think when all read together, clearly is dispositive in this particular case. But I think what Justice Kagan does in Mathis and what this court does again in Davis and Gundy is says, okay, we don't have to stop there. If we're not satisfied with certainty with regard to authoritative sources of state law, we can take what's known as this limited peek at the documents. And so if we take this limited peek at the documents, and I would invite this court's attention to the administrative record at 108, here's the criminal information. And the criminal information says unequivocally firearm, two-way shotgun, but it's that term firearm must be proven beyond the reasonable doubt. And then a couple of pages onward, you go to the judgment. The judgment in and of itself says firearm. And again, I'm not saying we engage in this panoply of the modified categorical approach when it comes to looking at all the documents, but this peek that Justice Kagan wants us to do in these particular cases, right? This is not about hypotheticals. Let's see what happened here. And we have a situation. Yes, Your Honor. It's not for us to question Supreme Court precedent, but that peek doesn't make any sense to me because you're actually doing the merits. You're actually doing the merits of the modified categorical approach to figure out whether you do a modified categorical approach. That just makes no sense to me. Obviously we will follow Mathis because it's Supreme Court precedent and we have to do what the Supreme Court has told us, but I will tell you that makes very, very little sense to me. Your Honor, I understand your frustration and I think in Davis, Judge Carnes himself mentions his frustration and literally saying we now go down as following the rabbit down this rabbit hole of this approach. And I agree. Unfortunately, I mean, that's as you mentioned, that's a Supreme Court case. But not only that is I think the 11th Circuit sort of stamp on it when it comes to Gundy, Cintrone and Davis for purposes of applying this particular approach to doing it. And again, when you take that all together, when you follow what is the case law on the books with regard to conducting this visibility analysis, there is really only one place you end up. I'll be in a rabbit hole, but there's only one place where that rabbit hole ends. And that rabbit hole ends is this is an all over broad statute that is in fact divisible. Now again, we move beyond sort of the peak and then we go to the documents applying the full-blown modified categorical approach. Yes. Looking at your Honor, I've convicted. I'm talking about 790 points to three. From the face of the statute, from those words, can I tell in your view whether it's divisible or indivisible? Or to answer that question, do I have to go to the case law and the standard jury instructions? I think it's I think it's part two, your Honor. And I think that's really what the Supreme Court says in Mathis is that when looking at the Supreme Court in Mathis applied some examples of whether or not the divisibility analysis can start and end at the face of the statute. And some of the examples they give is different sentencing, laying out different crimes, or strictly simply means. And I would invite this court's attention to Citroen versus AG, which I think the 11th Circuit goes through in an analysis, but the statute itself says trafficking in drugs. And that in and of itself was for a conviction of a trafficking in drugs statute, end all, be all. It was overbroad. It was indivisible in that particular, that's a 2018 case. In this particular case, you really, I don't mean to, I don't mean to cut you off. I just know whether in your view, I can determine divisibility or indivisibility from the face of the statute, from these words. And I take it your answer is no. Sabatino-Leo's personal attorney general answer would say yes, but under Mathis, I would say no, it's not clear enough for that, if that makes sense. And I hate to be hedging my bets here. And to answer the question up to the case law in Florida, and you, it doesn't really provide a clear answer as Judge Jordan said. So what I'm left with is a statute that isn't clear by your admission, case law that doesn't illuminate the problem, and a standard in jury instruction that maybe tells me a little bit more. Is that basically the corpus of materials from which I'm going to draw an answer? Well, I think you neglected the final step, which is the peak at the documents, which is what Mathis says. So we could, if your position was, if it was 100% correct, and we stopped after the authoritative sources of state law didn't have an answer, then arguably, too bad, so sad, move on. But Mathis, you weren't satisfied with the jury instruction, but Mathis commands that we don't stop there, we continue. And that's where this honor really dislikes this peak approach. And I understand and I appreciate it, but that's really what Mathis says. And when you do that peak, that little peak, when you take a look at that criminal information, that's when it really hits you like a two by four, right? It's you're there, it says firearm unequivocally. And then you look that's, and so that he was convicted of the possession of a firearm. And in short, corresponding with the federal firearm statute, too bad, you're done, you are removable on the 237A2C under the Immigration Nationality Act, Your Honor. That's how I, you, go ahead. Mr. Leo, let me ask you this hypothetical, okay? Okay. So to think about the peak, the information in the case charges a person with possessing one of the prohibited items in the Florida statute, okay? At trial, the proof is that he had both an electric whatever, and a shotgun. And the jury gets a general verdict that doesn't ask it to explain which one it found that this individual possessed, okay? Jury returns a general verdict of guilty. What happens in a case like this in the immigration setting? I think based upon that hypothetical, we don't have an answer. That peak doesn't satisfy that level of certainty that is commanded by the Supreme Court in this court's 11, this court's decisions for certainty, right? So really, that's what we're looking for. And again, I've been out of the criminal law sector for many, many years, and I apologize, Your Honor. Under what circumstances you would lose? You couldn't, you couldn't use this conviction, right? We couldn't, we wouldn't get there. No, Your Honor, we would not get there. Of course, far more likely is if the information or the charging document had read that way, almost surely the defense attorney would have asked for a bill of particulars to lay out what specific item we're talking about. But if they didn't, the answer would have to be that you couldn't proceed with removal on that basis. I think you're correct, Your Honor, based upon the current state of the law. Yes, Your Honor. So in short, Your Honors, I think we have a situation here where we have an overbroad statute that is divisible. Petitioner was convicted as being a felon in possession, possession of a firearm. That felon in possession of a firearm renders him that would respectfully request this court to deny the petition for review. And I thank you, Honors, for your time. All right. Thank you very much, Mr. Leo. Mr. Bellows, you've got your time for rebuttal left. Thank you. I think that hypothetical just proved my point. This is, this is a statute that is indivisible and that you can have multiple devices and you don't have to pick one. And you can send it to the jury and the jury doesn't have to agree on what the device was. As long as it's one of the unlawful devices, he can be convicted under the statute. And that statute is broader than the federal counterpart. And therefore, under Mathis, he can't be deported. I did want to point out, I do agree in terms of determining indivisibility. You are allowed to look at the statute, the case law, and the standard jury instructions. And I would, you know, ask you to go back to the standard jury instructions, because I read the standard jury instructions as demonstrating that this statute is indivisible. Excuse me, Mr. Bellows, are you saying we should not look at the information of the criminal? You can't, you can't do that. You can't start, you can't, that's, that's peaking. And that's, you know, that's cheating. I mean, and everybody wants to peek and see what the facts were. There are no facts here. Nothing was ever proved. This never went to the jury. This was a no contest plea. So there's no admission to anything. And in the Mathis case, The no contest plea in which the defendant is confronted with a document that says he possessed a firearm to which a shotgun. But he did, he didn't admit to that. It was no contest. He doesn't hear it before the immigration judge, his, his counsel. Problem with the argument, the problem with that argument is that for the purposes of the Immigration and Nationality Act, a plea of no contest is the functional equivalent of a plea of guilty. And so I understand the question, though, that Judge Ginsburg is raising, it would remarkable indeed if we know to a categorical certainty that the plea was to a firearm to with a shotgun. And we know that that's a basis for removal that we can't look at that document when we're not even clear about whether the statute gives us the answer about the visibility or indivisibility. And the law, which is pragmatic says, okay, under some circumstances, you're going to go a step further and take a peek at the charging instrument and the charging instrument plainly answers the question. So we have to bury deep in the ground, the charging instrument and say, we cannot look at it under these circumstances to discern whether or not he was found guilty, a judge guilty of possessing a shotgun, which we know would qualify. Correct. You can't look at what you're suggesting we ought to be doing here. Correct. Judge, you cannot look at the facts. You just look at the statute and you look at the fact that it's, it's indivisible. It allows for the prosecutor to, to put all of the elements, all of the devices in front of the jury. It's indivisible. The bell versus state. I mean, I cited it and I'm sorry, I cited it yesterday. Take a look at that. It talks about the fact that the statutes are kind of a quirky statute and that the legislature may have intended something different. Can I ask you just one other question, please? When I looked at the statute, the wording itself, it was kind of interesting the way they structured the Florida legislature, the statute. They spoke of, they said it's unlawful for a person to own or have in his care, custody or possession or control. And then it says any, and then it lists three things, a firearm comma ammunition or in the disjunctive or an electric weapon or device. And then it says, or to carry a concealed weapon. And there it uses the gerund phrase, including a tear gas gun or chemical weapon or device. If that person has been convicted of a felony in the state, when they wanted to create means using the word, including they sure knew how to do it. And yet the preparatory language speaks of possessing a firearm ammunition or electric weapon. And then only later do they break it down into tear gas gun, chemical weapon, et cetera. Is there any meaning that I should derive from that as to whether that helps me decide whether the statute on its face is divisible or indivisible? I haven't, I didn't get that far. That's an interesting observation. I do know that the use of the word any in Bell versus state was significant to that court in saying that it really is a bundle of devices. That is the crime. It's not separate crimes. You can't have the firearm and then the ammunition and the electric weapon as being separate divisible crimes. The use of the word any was significant to that court. And I think there are other district courts that have said the use of the word any. The meaning any means all. So let's talk about if we substitute the word all for any, so it would mean possession or control of all firearms, ammunition, or electric weapons or devices. Does that help you any? Well, it could be any all or some or one, right? It could be one. But how does that, how does that help your argument? It helps my argument is in that you have to assume that it's the least of those for purposes of this exercise, that it's the least of those. And you have to assume that it's, that it's a device that's not, that doesn't subject him to deportation. And thank you very much. Thank you. Thank you, Judge. All right. Thank you, Mr. Bellows. Thank you, Mr. Leo. We appreciate the argument from both of you. That's our final case for this morning. So court will be in recess until tomorrow morning at nine. Thank you.